**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 95-40307**
**Summary Calendar**

---

KENNETH DWAYNE COLLINS,

**Plaintiff-Appellant,**

**VERSUS**

JAMES A. COLLINS, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION;
FERNANDO E. FIGUEROA, Warden II, Asst Warden,
Coffield Unit, in individual capacity; PATRICK K.
VEST, Lt., Coffield Unit, in individual capacity,
JOE E. SATTLEWHITE, Property Officer, Coffield
Unit, in individual capacity,

**Defendants-Appellees.**

---

Appeal from the United States District Court
For the Eastern District of Texas
(6:93-CV-476)

---

December 15, 1995

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

BACKGROUND

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

Kenneth Dwayne Collins, a Texas Department of Criminal Justice (TDCJ) prisoner, filed a 42 U.S.C. § 1983 complaint alleging that prison officers searched his cell and seized his personal property without confiscation papers. Collins also alleged that he was transferred to institutional lockdown without cause.

Collins alleged that prison officers came onto his wing, screaming and hollering, and searched his cell. Collins alleged that following the shakedown of his cell, Lieutenant Vest questioned him about his identity and residency, but Collins was too upset to respond. Vest escorted Collins to the captain because he refused to respond even after being tightly handcuffed. When he returned to his cell, Collins found it in shambles and his gym shoes, watch, dictionary and commissary identification card were missing. Collins' tennis shoes and watch were ultimately returned to him.

Collins alleged that, while on institutional lockdown, he did not receive a proper diet, which caused him to lose weight and suffer from stomach cramps, low blood sugar and headaches, that he was denied daily showers, denied the right to attend religious services and denied medical attention. He was also not allowed any type of recreation and missed college classes.

The magistrate judge ordered Collins to file a more detailed pleading. Collins filed an amended pleading in which he alleged that Director Collins was liable for the acts of his subordinates, that Fernando Figueroa denied his grievances without a proper investigation, that Officer Vest had him placed in isolation

2

without cause and that Officer Sattlewhite failed to return his personal property after receiving it.

The magistrate judge conducted a **Spears**[1] hearing. The parties consented to the magistrate judge handling all further proceedings in the case. Collins testified at the hearing that the shakedown of his wing was the result of an earlier disturbance in another wing, which resulted in the whole block being locked down. Collins understood that the officers were coming to the wing to lift the lockdown and that they were searching everyone before they did so. Collins' cell was searched along with everyone else's cell.

Collins testified that he was placed on "loss of privileges" (LOP) because he had allegedly created a disturbance. He denied that he had created a disturbance or had been disruptive. Collins testified that he was not charged in writing prior to his transfer to another wing. He explained that prisoners are usually sent to "LOP" if they refused to work. Collins alleged that he was medically assigned to work squad #1 at that time. Collins stated that he had not refused to work and that his squad had not been turned out to work.

Collins testified that he was told that he was being transferred after the shakedown was completed. He believed that Vest was responsible for his transfer because he told Collins that "he had a place for me." Collins also believed Vest was responsible because Vest took Collins to his superiors.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

Collins testified that he sued James Collins because he was the head of the institution, Figueroa because he failed to investigate his grievances and Sattlewhite because he failed to return his dictionary. He acknowledged that Sattlewhite had not taken the dictionary, but contended that he was the property officer who allegedly received the dictionary.

A representative of the institution testified that Collins was not placed on LOP status and that Collins remained on institutional lockdown after the transfer. Collins contended that he was transferred from B-Wing, which is normally general population, to the F-Wing, which was a permanent lock-down area. The representative stated that he was not aware of the reason for the transfer.

Following the **Spears** hearing, the magistrate judge dismissed Collins' claims against James Collins and Officers Figueroa and Sattlewhite as frivolous. The magistrate judge determined that Collins' claims concerning his lost property did not support a due process violation because he had an adequate state post-deprivation remedy. However, the magistrate judge further determined that Collins' claim that Vest had him transferred to punitive segregation without a hearing stated an arguable constitutional claim.

A trial was held before the magistrate judge. Following the trial, but prior to the court's rendering a decision, Collins filed a motion to amend his complaint to add Lieutenant Baker and Warden Brock as defendants.

4

The magistrate judge filed a memorandum order in which he reviewed the evidence presented at trial.[2] The magistrate judge stated that Collins testified that he wished to rest on the allegations in his pleadings without offering further evidence and then submitted himself for cross-examination. Collins admitted on cross-examination that Vest did not escort him to the F-Wing, and he did not know if Vest had ordered the move.

Vest testified that Collins refused to enter his cell after the search and would state only that he wanted his property returned. Vest brought him to the dayroom to see Captain Ingram and Sergeant Baker. According to Vest, he had no further contact with Collins that day and had no responsibility for his being placed on lockdown.

Sergeant Baker testified that there had been considerable racial tension in the jail in April 1993, and that the inmates on both the "B" and "F" wing were on institutional lockdown. He explained that during the lockdown period, prisoners on the "F" wing no longer had a LOP status. Baker testified that he and Ingram were talking to inmates in the dayroom to isolate the inmates who were causing problems. Vest brought Collins to the dayroom and reported that he had been uncooperative. Collins refused to speak to Baker.

---

[2] This Court was not provided with a trial transcript because the magistrate judge denied Collins' request for a trial transcript and he did not file a motion for a transcript with this Court. Thus, the review of the testimony is based on the magistrate judge's summary of the evidence.

Baker met with Major Brock, the officer in charge of the building, and he ordered that Collins be transferred to the "F" wing. Baker testified that the transfer was not punitive, but merely a reclassification of a recalcitrant inmate. He conceded that Collins did not receive a disciplinary charge in connection with the transfer. Collins again testified and pointed out a statement in a response to one of his grievances that he had been transferred for disruptive behavior. Baker testified that the inmates on both wings were treated the same during institutional lockdown. He acknowledged that the "B" wing would be released from institutional lockdown prior to the release of the "F" wing.

The magistrate judge determined that Collins was not entitled to notice and a hearing prior to the transfer because he was not placed in segregation, but was merely moved to another area of the jail that was also on institutional lockdown. The magistrate judge further concluded that Collins had failed to prove that Vest was involved in the transfer.

The magistrate judge determined that Collins had failed to prove the deprivation of a constitutional right and, thus, that Vest was entitled to the defense of qualified immunity. The magistrate judge dismissed the suit with prejudice.

The magistrate judge subsequently issued another order in which he stated that he was treating Collins' motion to amend filed after his trial as a motion for new trial. The magistrate judge denied the motion based on his finding that Collins had failed to show that his transfer resulted in a due process violation.

6

Collins filed a notice of appeal, a motion to proceed in forma pauperis (IFP) on appeal and requested a trial transcript at government expense. The magistrate judge denied Collins' request for a transcript, but granted his motion to proceed IFP on appeal.

OPINION

Collins alleges that his personal property was taken and his cell was left in shambles by prison personnel. He argues that prisoners have a reasonable expectation that their property will not be wantonly destroyed.

Collins' property-loss claim was dismissed as frivolous following the **Spears** hearing. An in forma pauperis complaint may be dismissed as frivolous under § 1915(d) if it lacks an arguable basis in law or in fact. **Denton v. Hernandez**, 504 U.S. 25, 31-32 (1992). This Court reviews a § 1915(d) dismissal under the abuse of discretion standard.

"The Due Process Clause is not implicated by a state official's negligent act causing unintended loss of property and even intentional destruction of an inmate's property does not raise a constitutional claim if an adequate post-deprivation remedy exists." **Simmons v. Poppell**, 837 F.2d 1243, 1244 (5th Cir. 1988) (citing **Daniels v. Williams**, 474 U.S. 327 (1986) and **Hudson v. Palmer**, 468 U.S. 517 (1984)). Texas provides such a remedy. See **Meyers v. Adams**, 728 S.W.2d 771, 772 (Tex. 1987). Collins' deprivation of property claim does not allege a constitutional violation and, thus, does not have an arguable basis in law.

Collins argues that he was transferred to a punitive segregation area without notice that he was being charged with a disciplinary offense and without a hearing. He argues that he lost the privileges given to prisoners in the general population.

"Classification of prisoners is a matter left to the discretion of prison officials" because "prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status." **McCord v. Maggio**, 910 F.2d 1248, 1250 (5th Cir. 1990) (internal quotations and citation omitted).

"States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." **Sandin v. Conner**, 115 S. Ct. 2293, 2300 (1995).

In **Sandin**, the Court adopted a new and different methodology for determining whether a state has created a protected liberty interest to benefit prison inmates. **Id**. at 2297-2300. Rather than focusing on the presence or absence of mandatory statutory or regulatory language,[3] the Supreme Court determined that the reviewing court should consider the nature of the challenged state action and whether it involved such a significant departure from

---

[3] See, e.g., **Hewitt v. Helms**, 459 U.S. 460 (1983).

8

normal prison conditions that the state might have conceivably created a liberty interest. **Id**. at 2299. The Court determined that the prisoner's confinement to disciplinary segregation for a period of 30 days did not affect the duration of his sentence or "work a major disruption in his environment." **Id**. at 2300-01. Collins has not alleged nor did he testify that his placement on the "F" wing resulted in the loss of good time credits or the extension of the duration of his confinement on any other basis.

Thus, under **Sandin**, even if Collins' transfer to the "F" wing was a transfer to a disciplinary segregation area for punitive purposes as he alleges, it did not violate a protected liberty interest because the transfer did not impose "atypical and significant hardship[s]" when compared to "the ordinary incidents of prison life." **Id**. at 2300. Because Collins failed to show that he was deprived of a constitutional right, the issue of qualified immunity need not be addressed. See **Siegert v. Gilley**, 500 U.S. 226, 231 (1991).

Collins also argues for the first time on appeal that, although he is a Muslim, he was denied pork-free meals, except on three occasions, while he was on lockdown. Collins did not raise a First Amendment issue regarding the right of Muslim prisoners to receive a pork-free diet in the district court. This Court need not address issues not considered by the district court. "[I]ssues raised for the first time on appeal are not reviewable by this Court unless they involve purely legal questions and failure to consider them would result in manifest injustice." **Varnado v.**

9

**Lynaugh**, 920 F.2d 320, 321 (5th Cir. 1991) (internal citations and quotations omitted).  This issue, which would require the resolution of factual questions, is not subject to review for the first time on appeal.

AFFIRMED